*Formatted for Electronic Distribution*                                                                                                  *Not For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| **In re:**<br>    **ROLAND PION and**<br>    **LEITA PION,**<br>                  Debtors. | | **Chapter 7 Case**<br>**# 06-10538** |
| | Filed & Entered<br>On Docket<br>October 22, 2007 | |
| **Kevin Bean and Tina Bean,**<br>                 Plaintiffs,<br>     v.<br>**Roland Pion and Leita Pion,**<br>                 Defendants. | | **Adversary Proceeding**<br>**# 07-1012** |

| *Appearances:* | Shireen T. Hart, Esq. | James Swift, Esq. |
|---|---|---|
| | *Primmer Piper Eggleston & Cramer, PC* | *Langrock, Sperry & Wool, LLP* |
| | *Burlington, Vt.* | *Middlebury, Vt.* |
| | *For the Plaintiffs* | *For the Defendants* |

### MEMORANDUM OF DECISION
### GRANTING, IN PART, PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Kevin Bean and Tina Bean (the "Plaintiffs") filed a multi-count complaint against Roland Pion and Leita Pion (the "Defendants"): (1) seeking a determination that the Defendants' debt to them was not dischargeable as it was based on willful and malicious injury; (2) objecting to the exemption of the Defendants' real property; (3) seeking dismissal of the case as a bad faith filing; and (4) arguing for relief from the automatic stay by reason of the bad faith filing (doc. # 1, amended complaint doc. # 5). After the Defendants answered, the Plaintiffs filed a motion for partial summary judgment on the dischargeability count of the complaint. The Defendants opposed. For the reasons that follow, the Court grants, in part, the Plaintiffs' motion for partial summary judgment.

### FACTUAL BACKGROUND

The Plaintiffs submitted a Statement of Undisputed Facts (the "Statement") (attached to doc. # 19). The Defendants did not dispute paragraphs 1-8 of the Statement, but disputed the Plaintiffs' characterizations of certain state court opinions and orders in paragraphs 9-18 to the extent they were "inaccurate or incomplete," asserting as well that each of these documents "speaks for itself" (doc. # 29). The Court does not find that paragraphs 9-18 of the Plaintiffs' Statement contain any "characterizations" of the state court opinions and orders. Rather, these paragraphs quote extensively from the documents themselves and reflect undisputed points of fact. As such, the Court accepts paragraphs 9-18 as undisputed, and reproduces the Plaintiffs' Statement below *in toto*.

1. The Plaintiffs are residents of Franklin County, Vermont. Answer, ¶ 3.

2. The Defendants, the Debtors in the above bankruptcy case, are residents of Franklin County, Vermont. Answer, ¶ 4.

3. When relevant to this case, the Plaintiffs and Defendants owned adjoining residential lots in Saint Albans, Vermont. Answer, ¶ 5.

4. The Defendants' lot, which they have since transferred, resembles a "u" and surrounds the Plaintiffs' lot. Answer, ¶ 6.

5. Both parcels front Vermont Route 36 on the south. Answer, ¶ 7.

6. The parties were in dispute as to the northern, western and eastern borders of the Plaintiffs' lot. Answer, ¶ 7.

7. On August 3, 2000, the <u>Defendants</u> filed a complaint to quiet title in the Franklin Superior Court in which they claimed that the <u>Plaintiffs</u> were trespassing onto their property, discharging sewerage onto their land and had removed surveyors' pins that marked the boundaries between their property and the Plaintiffs' property. Answer, ¶ 8.

8. The Plaintiffs filed counterclaims against Defendants, raising allegations of trespass, infringement of riparian rights, intentional infliction of emotional distress, invasion of privacy, removal of trees and nuisance. Answer, ¶ 9.

9. Following a trial by court, in a March 11, 2002 Findings of Fact, Conclusions of Law and Orders (the "Judgment 1"), the Franklin Superior Court, Judge Benjamin Joseph presiding, made the following relevant findings:

   a. As to the [Pions'] <u>Claims</u>, the Court found that the[y] failed to present any credible evidence in support of their claims.
      There is no credible evidence that the [Beans] discharged sewerage onto the [Pions'] property. There is no credible evidence that the [Beans] trespassed onto the [Pions'] property. There is no credible evidence that the [Beans] removed surveyor's pins. Indeed, the court has found that it was the [Pions] who removed the surveyor's markers. Mrs. Pion's testimony is totally incredible.
   Judgment 1, at 11 (attached as Exhibit A).

   b. As to the [Beans'] Claims:
      i. <u>Quiet Title – the Boundary Dispute</u>:
         It is a basic principle of Vermont law that there must be a threat of oppressive litigation before a court can use its equitable powers to resolve boundary disputes. *Price v. Rowell*, 121 Vt. 393 (1960).
         In this case, the conduct of the Pions has established such a pattern of trespass and harassment that this court must use its equitable powers not only to prevent future litigation but also to correct the wrongs already done by them. *State v. Presault*, 163 Vt. 38, 43 (1994). The [Pions], <u>for the purpose of harassing the [Beans]</u>, caused flooding to the Plaintiffs' basement that resulted in property damage. . . . The pipes were removed by the Pions when they destroyed the stream bed where the pipes were placed.

2

Judgment 1, at 11 (attached as Exhibit A) (emphasis added).

    ii.  <u>Riparian Rights</u>:
        The [Pions] altered the drainage of water from and across the [Beans'] lot when they filled in the stream bed and installed a culvert behind the [Beans'] property. The original pins marking the northern boundary were located in the bed of a stream that ran from east to west – from a pond to the east of the [Beans'] lot to a ditch along Kellogg Road to the west. By installing the culvert and blocking the discharge of water from the [Bean] basement into the stream, the [Pions] stopped the discharge of water into the stream that had been going on continuously since 1973. Their actions caused flooding in the [Beans'] basement and resulted in property damage. Because there has been an injury to property, the [Beans] are entitled to injunctive relief. (Citation omitted) . . . The [Pions'] testimony that they filled in the stream bed so that they could increase their use of their own property is not credible. They filled in the stream bed to harass the [Beans].

Judgment 1, at 14-15 (attached as Exhibit A).

    iii.  <u>Cutting Trees</u>:
        Because the court has determined that the northern boundary of the [Bean] lot is as discussed above, the two large trees cut down by the [Pions] were on the [Beans'] property. Under Vermont law, someone who cuts down trees belonging to another person must pay treble damages to the rightful owner unless the cutter has "good reason" to believe that the trees belonged to him. (Citation omitted). Here, the Pions destroyed evidence of the northern boundary when they removed the original surveyor's pins. . . . [T]heir own survey show the trees straddling the northern boundary. The Pions did not have a "good reason" to believe that the trees were theirs when they cut them down. They acted solely out of malice in their effort to drive Mr. Bean and [Mrs. Bean] from their home. Accordingly, the Pions must pay treble damages.

Judgment 1, at 15-16 (attached as Exhibit A).

    iv.  <u>Invasion of Privacy</u>:
        To support this claim, there must be proof that there was a substantial, intentional intrusion upon the solitude or seclusion of another which would be highly offensive to a reasonable person. . . The court finds that the [Pions repeated, false complaints to the police alleging criminal activity by the Beans] were not motivated by a concern that violations of law were actually occurring. They were motivated by the [Pions'] malicious plan to drive the [Beans] from their home. Ms. Pion expressly threatened Mr. Bean saying that she would drive him away. She made the same threat to previous owners. . . . The [Beans] are entitled to recover damages for the mental distress caused by the invasion of their privacy if the damage is of a kind that normally results from such an invasion. . . . These are consequences that one would expect to result from this kind of vicious conduct.

Judgment 1, at 17-20 (attached as Exhibit A).

    v.  <u>The Stone Wall near the Western Boundary</u>
        On or about May 3, 2001, [the Pions] began to tear down the stone wall [] built in 1965. Before the court could issue a restraining order, [the Pions] tore down the northern two-

3

> thirds of the wall. On or about May 18, 2001, [the Pions] were ordered to restore the wall to its original condition and location. When [the Pions] repaired the wall, they moved part of it about two feet [toward the Beans' house].
> . . .
> Since [the Pions] did not follow the court's injunction to put the stone wall back in its original location, the court will not order [the Pions] once again to put the wall in its original condition. . . .
> If and when a[n] estimate is approved by the court, the court will issue judgment for the [Beans] against the Pions in that amount. . . .
>
> Judgment 1, at 21-22 (attached as Exhibit A).

      vi.    **Punitive Damages:**

> Punitive damages may be awarded where there has been a showing of actual malice. The proof that the [Pions], especially Mrs. Pion, have acted maliciously is overwhelming. The purpose of punitive damages is to punish morally culpable conduct and to deter similar conduct in the future. (Citations omitted).
> Obviously, Ms. Pion is much more culpable than Mr. Pion, although they both have acted maliciously in an attempt to drive the [Beans] out of their home. The Pions' vicious disregard and disrespect for the [Beans'] personal and property rights has been extraordinary.
>
> Judgment 1, at 23 (attached as Exhibit A).

10. Judgment for the Plaintiffs and against the Defendants for compensatory damages was entered in the following amounts:

    | | | |
    |---|---|---|
    | i. | destruction of trees: | $15,900.00; |
    | ii. | removal of surveyors' pins: | $350.00; |
    | iii. | removal of two tree stumps: | $300.00; |
    | iv. | destruction of personal property: | $1,500.00; and |
    | v. | invasion of privacy: | $20,000.00. |

    Judgment 1, at 24 (attached as Exhibit A).

11. Judgment for the Plaintiffs and against Mr. Pion for punitive damages was entered in the amount of $5,000.00. Judgment 1, at 23 (attached as Exhibit A).

12. Judgment for the Plaintiffs and against Mrs. Pion for punitive damages was entered in the amount of $25,000.00. Judgment 1, at 23 (attached as Exhibit A).

13. The Defendants appealed Judgment 1 to the Vermont Supreme Court. The Vermont Supreme Court affirmed Judgment 1 in full. Pion v. Bean, 176 Vt. 1, 833 A.2d 1248, 2003 VT 79 (attached as Exhibit B).

14. In a Supplemental Order and Judgment of Contempt ("Judgment 2"), entered by the Franklin Superior Court on December 23, 2002, the Plaintiffs were awarded a supplemental judgment against the Defendants in the amount of $1,000.00, as the result of being found in contempt of Judgment 1. Judgment 2 (attached as Exhibit C).

4

15. The Defendants appealed Judgment 2. On March 25, 2003, an Entry Order from the Vermont Supreme Court was issued dismissing the Defendants' appeal for failure to make the requisite filings with the Supreme Court.

16. In an Opinion and Order – Construction Costs, entered by the Franklin Superior Court on December 30, 2004, the court entered judgment for the Beans in the amount of $8,680.00 ("Judgment 3"). Judgment 3 (attached as Exhibit D).

17. The Pions' obligation to pay this repair was set forth in Judgment 1 wherein the trial court required the Pions to pay for the cost of restoring the stone wall that they had partially torn down and repaired to the Beans' detriment. Judgment 1, at 22-23 (attached as Exhibit A).

18. The Defendants appealed Judgment 3 on January 19, 2005. The Opinion and Order became final when the Vermont Supreme Court issued an Entry Order on August 8, 2005. Of particular relevance to the matter at hand, the Vermont Supreme Court held that "[the Pions were], essentially, seeking to circumvent the finality of [Judgment 1] through this appeal." Entry Order dated August 8, 2005 (attached as Exhibit E).

The Court deems these to be the material, undisputed facts in the dischargeability cause of action.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004).

In this case, the Court finds there is no dispute as to any material fact, as the material facts which would determine the outcome of this motion are set forth in the text of the state court decisions and orders set out above. Accordingly, the Court finds the dischargeability issue raised herein is properly resolved on summary judgment.

## DISCUSSION

The issue presented herein invokes two questions: first, do the acts committed by the Debtors-Defendants that gave rise to the state court judgments and the Plaintiffs' claim, constitute the type of willful and malicious injury that is excepted from discharge; and second, are the Defendants barred from relitigating the merits and legal import of their actions by the doctrine of collateral estoppel? We begin by examining the definition and applicability of the pertinent bankruptcy exception and collateral estoppel.

### I. DEFINITION AND SCOPE OF THE EXCEPTION FROM DISCHARGE AND THE COLLATERAL ESTOPPEL DOCTRINE

**A.  Willful and Malicious Injury Under § 523(a)(6)**

Section 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under section 727 [and certain other sections of the Code] does not discharge an individual debtor from any debt –
* * *
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

§ 523(a)(6). The statute is written in the conjunctive; it requires the Plaintiff to show that the acts or conduct of the Debtor were both willful *and* malicious. A creditor seeking to establish nondischargeability under § 523(a) must do so by a preponderance of the evidence. Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (citing Grogan v. Garner, 498 U.S. 279, 291 (1991)). The policy concerns underlying this provision balance the position that exceptions to discharge are strictly construed in favor of debtors in order to provide them with a "fresh start," with the position that the Code should not "reward[ ] blameworthy debtors through discharge." Maguire v. Gorruso (In re Gorruso), 2004 WL 169706 at * 5 (Bankr. D.Vt. Jan. 22, 2004).

The Code does not define the words "willful" or "malicious."  In Kawaauhau v. Geiger, 523 U.S. 57 (1998), the Supreme Court's most recent interpretation of § 523(a)(6), the Court explained that nondischargeability under § 523(a)(6) required an intentionally-inflicted injury: recklessness or negligence would not suffice to establish "willful" conduct. Id. at 63-64. There, the issue was the dischargeability of a medical malpractice judgment against the physician-debtor, and the Court declared that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury," id. at 61. The Court likened such an injury to intentional torts that "generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" Id. at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)(emphasis added)). "The term 'willful,' as expressed in 523(a)(6), is synonymous with intentional . . . The statute requires not only intentional conduct on the part of the debtor, but also intentional or deliberate injury." Ball v. A.O. Smith Corp, 321 B.R. 100, 105

(N.D.N.Y. 2005) (quoting Morelli v. Service Am. Dining Servs., 1998 WL 166878 at *2 (N.D.N.Y. Apr. 3, 1998)). See Belval v. Belval (In re Belval), 2007 WL 888825 * 5-* 6 (Bankr. D.Vt. Feb. 28, 2007).

The term malicious "means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." Navistar Financial Corp. v. Stelluti (In re Stelluti), 94 F.3d 84, 87 (2d Cir. 1996) (citing 3 Lawrence P. King et al., Collier on Bankruptcy ¶ 523.16[1] at 523-110 (15th ed. 1996)). "Malice may be constructive or implied. . . . Implied malice may be demonstrated 'by the acts and conduct of the debtor in the context of the surrounding circumstances.'" Id. at 88 (quoting In re Stanley, 66 F.3d 664, 668 (4th Cir. 1995)).

**B.    Collateral Estoppel**

The doctrine of collateral estoppel "prevents a [party] from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003). Collateral estoppel "applies to bankruptcy proceedings where the requisite common law elements are met." Strauss v. Strauss (In re Strauss), 2006 WL 2583645 at *3 (Bankr. S.D.N.Y. July 21, 2006) (citing Grogan, 498 U.S. at 284 n.11). "Parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception." Ball, 451 F.3d at 69. "Collateral estoppel is applicable if the facts established by the previous judgment" – in this case, a state court judgment – "meet the requirements of nondischargeability." In re Docteroff, 133 F.3d 210, 215 (3d Cir. 1997). "When determining whether a state court judgment has such a preclusive effect, we apply the relevant state law of collateral estoppel." Duncan v. Duncan (In re Duncan), 448 F.3d 725, 728 (4th Cir. 2006). In Vermont,

> Application of the [collateral estoppel] doctrine requires that:
>
> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Scott v. City of Newport, 177 Vt. 491, 493-94, 857 A.2d 317, 321 (2004). Accord Gorruso, 2004 WL 169706 at * 3.

**II.    APPLICATION OF COLLATERAL ESTOPPEL AND THE DISCHARGEABILITY EXCEPTION TO THE UNDISPUTED MATERIAL FACTS OF THIS CASE**

The Plaintiffs seek summary judgment on Count I of their complaint on the ground that

> the Defendants are collaterally estopped from relitigating the issue of whether their actions underlying their debt to the Plaintiffs were malicious and willful. The Franklin Superior Court, with an affirmative holding by the Vermont Supreme Court, already found the Defendants' actions to be willful and malicious, such that the final judgments comprising the Defendants' debt to Plaintiff[s] are non-dischargeable under 11 U.S.C. § 523(a)(6).

(doc. # 19, p. 2).

7

In response, the Defendants argue that the state court

> did <u>not</u> make specific findings in connection with any of the Beans' claims that the Pions' conduct was 'willful and malicious' or that an intentional or deliberate 'injury' resulted therefrom as required by section 523(a)(6) of the Bankruptcy Code. Given that exceptions to discharge in bankruptcy must be 'strictly construed,' against the objecting party and in favor of the debtor . . . the fact that a similar or related issue was decided in state court litigation cannot possibly satisfy the prerequisite for the application of collateral estoppel that the 'identical' issue was 'actually litigated or decided.'

(doc. # 28, p. 5).

**A. Collateral Estoppel**

The Defendants' collateral estoppel argument misses the mark. They argue that because the state court judgments did not specify that the various injuries suffered by the Plaintiffs were "willful and malicious," collateral estoppel does not apply because the issues in that court and in this Court are not identical. In <u>Gorruso</u>, this Court encountered a similar circumstance:

> The state court judgment did not anticipate the question of whether the Debt would be dischargeable in a bankruptcy case. Nor did the state court action determine whether the Debtor's actions were willful and malicious. . . . Since the Debtor seeks to discharge the Debt through his bankruptcy case, this Court must determine whether the Debtor's [behavior underlying the state court's judgments] were willful and malicious. . .

<u>Gorruso</u>, 2004 WL 169706 at * 4. In that case, the Court examined the findings of the state court and was able to discern from the judgment, as well as additional evidence, that the Debtor's conduct was willful and malicious even though the state court did not make an explicit finding to that effect.

The conduct at issue in this case, as set out in the Plaintiffs' complaint, is the very same conduct that was fully assessed by the state court and resulted in judgments in favor of the Plaintiffs, and is the basis of the debt that the Defendants now seek to discharge. In <u>Ball</u>, the Second Circuit approved the application of collateral estoppel to the <u>facts</u> concerning the debtor's conduct that had been found in the earlier court proceeding, which led to a judgment that the debtor sought to discharge in bankruptcy court. The Court held that those facts had been fully litigated and were necessary to the first judge's decision to impose sanctions on the attorney-debtor for filing a frivolous appeal. <u>Ball</u>, 451 F.3d at 69. See <u>Yash Raj Films (USA) v. Ahmed (In re Ahmed)</u>, 359 B.R. 34, 40 (Bankr. E.D.N.Y. 2005), <u>aff'd</u> 368 B.R. 120 (2007) ("The 'identity of issues' analysis requires inquiry into the actual facts found and presented in the earlier litigation."). Moreover, the Supreme Court has held that direct identity of issue is not required, <u>see</u> <u>Montana v. U.S.</u>, 440 U.S. 147, 155 (1979), and, in <u>Ahmed</u>, the bankruptcy court reasoned that "the issues presented here are in substance the same because the element of willfulness was needed to award the enhanced statutory damages in the District Court Action and it is needed here in order for the debt to be found nondischargeable under § 523(a)(6)." <u>Ahmed</u>, 359 B.R. at 40.

8

Finally, although an earlier decision may not have denominated a debtor's actions as "willful and malicious," when it is clear from the record that the debtor's actions meet the pertinent definition of "willful and malicious," that is sufficient to find that collateral estoppel applies and the debt in question is excepted from discharge under § 523(a)(6). Ball, 321 B.R. at 105, aff'd 451 F.3d at 69-70.

The Defendants do not contest the other elements of collateral estoppel, and this Court finds that all the other elements are satisfied. Accordingly, under 28 U.S.C. § 1738, this Court gives full faith and credit to the state court judgments and finds that they have preclusive effect vis a vis the dischargeability cause of action before this Court.

**B. Is the Debt Dischargeable?**

Although this Court gives the state court judgments preclusive effect, whether the debt based on those judgments may be discharged in bankruptcy is an entirely distinct question. In that regard, the Court must determine whether the Defendants' actions meet the § 523(a)(6) definition of "willful and malicious."

The debt that Defendants seek to discharge has many components: some have their genesis in the March 11, 2002 "Findings of Fact, Conclusions of Law, and Orders" ("Judgment 1"), while others arise from the December 23, 2002 "Supplemental Order and Judgment of Contempt" ("Judgment 2") and the December 30, 2004 "Opinion and Order – Construction Costs" ("Judgment 3"). In order to determine what portion, if any, of the Plaintiffs' debt is properly excepted from discharge, the Court must examine the state court's factual findings underlying each of the monetary damage awards and assess whether the conduct that gave rise to each sanction meets the "willful and malicious" standard of § 523(a)(6).

In Judgment 1, the state court awarded the Beans compensatory damages relating to their counterclaims that the Pions (a) trespassed on their property (by, inter alia, "cutting down two of their trees, attempting to tear down a stone wall that stands near the western boundary of their lot, and removing iron pins that marked the northwest and northeast corners of their lot"); (b) "infringed on their riparian rights by altering the flow of water across [the Beans'] property and by destroying a stream that used to run along its northern boundary"; and (c) invaded their privacy. (Judgment 1, attached to doc. # 5 as Ex. A at p. 2). The state court awarded the following compensatory damages: for destruction of trees, $15,900; for removal of surveyor's pins, $350; for removal of two tree stumps, $300; for destruction of personal property by flooding, $1,500; for invasion of privacy, $20,000. Id. at 24. The state court also awarded the Beans punitive damages, apportioned between Mr. and Mrs. Pion, finding that the Pions' "vicious disregard and disrespect for [the Beans'] personal and property rights has been extraordinary." Id. at 23. In addition, the state court awarded the Beans certain amounts based on the Pions' violation of various injunctions contained in Judgment 1. Id. at 21-23. The state court denied the Beans' counterclaims for intentional infliction of emotional distress and nuisance. Id. at 16-17, 20.

1. The Various Trespass Claims and Related Injunctive and Punitive Damages

There is no question that the state court found that the Defendants' actions identified in the trespass claim – cutting down two of the Plaintiffs' trees, partially tearing down a stone wall, removing the iron pins that marked the northwest and northeast corners of the Plaintiffs' lot, and filling in the streambed – were both willful and malicious, as those terms are understood pursuant to § 523(a)(6). The state court found that the Defendants had engaged in "a pattern of trespass and harassment" against the Plaintiffs. Id. at 11. Harassment is defined in Black's Law Dictionary (8th ed. 2004) as "words, conduct or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." In this Court's opinion, that definition encompasses both a willful component – an intent to cause injury in the form of annoyance, alarm, or substantial emotional distress, as such negative behaviors are intentionally directed at a particular person (or property) – and malice, in that the behavior is "serves no legitimate purpose" or, put another way, is "wrongful and without just cause or excuse." The Pions' harassing behaviors that comprised the trespass claim took the form of destruction of (injury to) the Beans' property (cutting trees, removing pins, tearing down a wall, filling in a streambed) and was without "just cause or excuse" and the damages based on those behaviors are therefore not dischargeable.

Even without parsing the definition of harassment, the record is replete with specific references to the willfulness and malice of the Pions' trespass behavior.

First, with regard to the cutting of trees, the state court held that the Pions "did not have a 'good reason' to believe that the trees were theirs when they cut them down. They acted solely out of malice in their effort to drive [the Beans] from their home," and that the cutting of the trees "was part of the Pions' effort to 'survey' the [Beans] off their property" (doc. # 5, Ex. A at pp. 15-16). The state court found that the Pions engaged in a deliberate act to injure the Beans' property as part of their deliberate campaign of trespass.[1] That is as clearly a willful injury as can be found in any case that discusses § 523(a)(6). The act was malicious, having "no just cause," as the state court held that the Pions had "no good reason" to cut the trees. The Defendants argue that the state court's reference to "malice" is not the legal equivalent to malicious injury under § 523 (doc. # 28, p. 7). They are incorrect. In Bolsta v. Johnson, 176 Vt. 602, 848 A.2d 306 (2004), the Vermont Supreme Court described malice (when determining whether to impose punitive damages):

> Punitive damages are permitted upon evidence of malice '[w]here the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime.' . . . Actual malice may

---

[1] The Defendants' statement that "the facts would show that, when they removed the trees, the Pions believed them to be located on their own property, which would negate any intent on their part to inflict injury upon the Beans" (doc. # 28 p. 7), without a reference to the record is curious, especially in light of the fact that the state court held that not only were the trees located inside the Beans' property line, but even the Pions' survey showed that the trees straddled the property line (doc. # 5, Ex. A, pp. 9, 15), and that holding was affirmed by the Supreme Court.

> be shown by conduct manifesting personal ill will or carried out under circumstances evincing insult or oppression, or conduct showing a reckless disregard of others.[2] In any case, however, there must be some evidence of bad motive, as mere negligence or even recklessness are not sufficient to show malice. . .

Id. at 602, 848 A.2d at 308 (quoting Brueckner v. Norwich Univ., 169 Vt. 118, 129, 730 A.2d 1086, 1095 (1999)). This definition fits quite comfortably into the § 523(a)(6) definition of "malicious." Both describe wrongful, inexcusable behavior – with the Vermont definition of malice arguably describing a more extreme level of bad behavior.

Therefore, the compensatory damages that the state court assessed regarding damage to the Beans' trees - $15,900 for destruction of the trees and $300 for removing the stumps – are not dischargeable as they arise from willful and malicious injuries.

Similarly, it is clear from the record that the Pions' tearing down the stone wall, and then, upon being ordered by the court to restore the wall to its original condition, moving the new wall two feet closer to the Beans' house, was part of their willful and malicious campaign to injure the Beans and their property. Not only did they destroy the wall, but they once again put into effect their plan of "surveying" the Beans off their property by attempting to grab two feet of land that was not theirs. These behaviors not only evidence intentional acts, but intentional acts directed at injuring the Beans' property. They were also malicious, as that term is understood under § 523(a)(6). See In re Sarff, 242 B.R. 620, 627-28 (6th Cir. BAP 2000) (holding that violation of an injunction is an aggravating circumstance which warrants inference of malice). The state court recognized the obdurate stance of the Pions in not complying with its orders concerning rebuilding the stone wall when it ordered the Beans to "hire a contractor to restore the stone wall to its original condition, in its original location" (and in so doing, to remove fencing that the Pions had erected inside the Beans' property line) (doc. # 5, Ex. A at pp. 8, 22). Once the court approved the contractor's estimate, it would issue a judgment in that amount. Id. Judgment 3 (doc. # 5, Ex. D) is such a judgment, and therefore the costs associated with rebuilding the stone wall and removing fencing that the Pions "erected inside the northern, western and eastern boundaries of the [Beans'] lot" (doc. # 5, Ex. A, p. 22), based on the Pions' trespass and injury to the Beans property, are not dischargeable.

The state court also found that the Pions had removed the pins marking the northeast and northwest boundaries of the Beans' property; that the Beans had spent $350 to replace those original pins; and that the Pions removed the replacements as well.[3] Id. at p. 8. In addition, the Pions filled in the streambed where those pins had been located. Id. at p. 12. The state court observed that the Pions had "destroyed evidence of the northern boundary when they removed the original surveyors' pins." Id. at p. 15. Both of

---

[2] This is the articulation of malice in Pion v. Bean, 176 Vt. 1, 14, 833 A.2d 1248, 1259 (2003), a year before the Bolsta opinion, where the Vermont Supreme Court described actual malice as "conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression," or "conduct showing a reckless or wanton disregard of one's rights."

[3] The state court found that Mr. Pion removed an iron pipe marking the Beans' eastern boundary, and "the original southeastern 'iron post' that marked the southeastern corner is missing."(doc. # 5, Ex. A at p. 14).

these actions (removing the pins and filling in the streambed) were part of the Pions' campaign to "survey the Beans off their property" – a series of acts which this Court has already held the Pions pursued with the intent to cause injury to the Beans property and thus constitute willful injury under § 523(a)(6). Further, they were malicious as they were "without just cause." Accordingly, the $350 in costs assessed for the removal of the surveyor's pins is not dischargeable.

With regard to the streambed, the state court specifically found that the Pions filled in the streambed to "harass" the Beans. Id. at p.14. This is a sufficient finding, as articulated above, for this Court to hold that it was a willful and malicious injury. The state court also ordered the Pions to "restor[e] the streambed to the condition it was in before they destroyed it," id. at p. 22, a project that included removal of a culvert the Pions had installed, which "had the effect of moving the stream's water into a pipe that ran from east to west behind the [Beans] lot and then emptied out onto the Pions' property to the west. That meant that there no longer was a stream bed for water to flow into from the [Beans'] basement." Id. at p. 8. Similar to its order concerning the rebuilding of the stone wall, the state court noted that the Pions could not be "relied upon to follow directions from the court," and therefore ordered the Beans to obtain an estimate from a contractor for the cost of restoring the streambed to its original condition. Id. at p. 22-23. In Judgment 3, the court accepted the contractor's estimate to remove the culvert and restore the streambed (doc. # 5, Ex. D). Because these costs are associated with the Pions' willful and malicious injury, albeit as injunctive relief, they may not be discharged.

To further underscore the willful and malicious nature of the Pions' various trespass offenses, the state court awarded punitive damages: $25,000 against Mrs. Pion and $5,000 against Mr. Pion. In Vermont, in order for a party to be awarded punitive damages, there must be evidence of malice and bad motive and "mere negligence or recklessness are not enough." Bolsta, 176 Vt. at 602, 848 A.2d at 308. It is well established that "when the awards of compensatory damages and punitive damages are based upon the same conduct, the punitive damages award will be nondischargeable under § 523(a)(6) if the compensatory damages award is found to be nondischargeable." Muegler v. Bening, 413 F.3d 980, 984 (9th Cir. 2005). Accord Sarff, 242 B.R. at 627. Here, all of the compensatory damages based on trespass are excepted from discharge. Therefore, the punitive damages based on the same conduct are likewise excepted from discharge.

### 2. Intrusion Upon Seclusion

In Vermont, intrusion upon seclusion is a form of invasion of privacy. "To state a cause of action for intrusion upon seclusion, the plaintiff must allege an intentional interference with [her] interest in solitude or seclusion, either as to [her] person or as to [her] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]. Moreover, the intrusion must be substantial." Hodgdon v. Mt. Mansfield Co., Inc., 160 Vt. 150, 162, 624 A.2d 1122 (1992) (quoting Restatement (Second) of Torts § 652B (1977)). Here, the state court held that the repeated false complaints that the Pions made to

12

various authorities against the Beans "were motivated by the [Pions'] malicious plan to drive the [Beans] from their home. Ms. Pion expressly threatened Mr. Bean saying that she would drive him away. She made the same threat to previous owners" (doc. # 5, Ex. A at p. 18). The state court also took note of the mental distress and harm suffered by Mrs. Bean which resulted from the "vicious conduct" of Mrs. Pion. Id. at p.19. The court's award of $20,000 to the Beans for invasion of privacy satisfies the willful and malicious injury elements of § 523(a)(6): it was willful because the state court held that the behaviors underlying the claim constituted "intentional" (i.e., willful) interference, and found extensive evidence of malice. Accordingly, the $20,000 compensatory damage award for invasion of privacy is excepted from discharge.

### 3. The Contempt Order (Judgment 2)

In Judgment 2, filed on December 23, 2002 (doc. # 5, Ex. C), the state court found that the Pions had violated Judgment 1 (entered March 11, 2002), held the Pions in contempt, and ordered them to pay a $1,000 sanction to the Beans for violating that order. As a specific rationale for finding contempt, Judgment 2 cited a paragraph from Judgment 1 that ordered the Pions to cease their harassment of the Beans, and forbade the Pions from surveilling the Beans' property by way of taking photographs or using binoculars (doc. # 5, Ex. C).

This $1,000 contempt award may not be discharged. "The violation of a court order that results in an order of contempt has been found to satisfy the willful and malicious requirements of § 523(a)(6)." Dentrust Dental Int'l v. Rosenberg (In re Rosenberg), 2007 WL 2156282 at * 4 (Bankr., N.D.Ohio July 23, 2007). The cases cited in Rosenberg reason that the contemnor-debtor must have knowingly disobeyed the underlying order, which leads the court to conclude that the debtor engaged in a deliberate and intentional act, see Heyne v. Heyne (In re Heyne), 277 B.R. 364, 369 (Bankr. N.D.Ohio 2002), and that defiance of a court order constitutes the kind of aggravating circumstances that courts in the Second Circuit have found to be sufficient to satisfy the malicious requirement, see Bundy American Corp. v. Blankfort, 217 B.R. 138, 145 (Bankr. S.D.N.Y. 1998). In this case, the Pions were ordered not to further injure the Beans by way of harassment. The Pions defied the order and continued to harass the Beans. "[W]hen a court of the United States . . . issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order as is proven. . . in the issuing order are *ipso facto* the result of a 'willful and malicious injury.'" Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn), 242 B.R. 229, 238 (Bankr. W.D.N.Y. 1999). This Court agrees with this analysis, finds it equally applicable to the state court judgment in these circumstances, and holds that the contempt award may not be discharged.

### 4. Destruction of Personal Property

As a result of the Pions' filling in of the streambed and installation of a culvert, the "water that had drained from [the Beans] property since 1975 no longer had a stream to flow into. Therefore, the drainage

13

water backed up into the basement of the [Beans] house, causing $1,500 damage to appliances, a television, clothes and other things that the [Beans] had stored there" (doc. # 5, Ex. A at pp. 8-9). The state court awarded the Beans $1,500 in compensatory damages for the destruction of that property.

While this Court has held that the Pions' various forms of trespass, including filling in the streambed, constituted willful and intentional injuries to the Beans' property, this Court has been unable to find any reference in the state court decision that would show that the Pions intended to cause the destruction of the Beans property by flooding when they filled in the streambed and installed the culvert. In other words, the Court finds no evidence in the record that the Pions *intended the consequences of the act* of filling in the streambed and installing the culvert, namely, the destruction of the property by flooding. The record merely establishes that the Pions *intended to commit the acts* that ultimately led to the injury. This is a crucial distinction. See Kawaauhau, 523 U.S. at 61-62. Accordingly, because it was not willful, as understood under § 523(a)(6), it does not satisfy the statute's requirements for dischargeability and therefore the Court holds that the $1,500 damage award may be discharged.

## CONCLUSION

For the reasons set forth above, the Court finds that the Plaintiffs have established, by a preponderance of the evidence, that most of the Defendants' conduct that warranted compensatory and punitive damages in the state court proceedings warrants an exception from discharge under § 523(a)(6); that no material facts are in dispute; and that the Plaintiffs are entitled to judgment as a matter of law as to those portions of the debt that arose from willful and malicious acts. The Court hereby determines that the following amounts, totaling $76,230, meet the criteria of §523(a)(6) for exception from discharge and shall survive the Defendants' bankruptcy discharge:

| | |
|---|---|
| $15,900 | for destruction of trees |
| $   350 | removal of surveyor's pins |
| $   300 | removal of two tree stumps |
| $20,000 | invasion of privacy |
| $30,000 | punitive damages against Mr. and Mrs. Pion |
| $ 1,000 | contempt award from Judgment 2 |
| $ 8,680 | repair stone wall, remove fencing, restore streambed, remove culvert |

However, the Court finds that the $1,500 in compensatory damages awarded to the Beans for damage to their personal property is not excepted from discharge pursuant to § 523(a)(6), and hence that portion of the judgment debt owed to the Plaintiffs shall be discharged.

Accordingly, the Court grants, in part, the Plaintiff's motion for partial summary judgment on Count I of the complaint.

October 22, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge